IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01195-CMA-CBS

COCONA, INC., a Delaware corporation,

        Plaintiff,

v.

COLUMBIA SPORTSWEAR COMPANY, an Oregon company,

        Defendant.

---

RECOMMENDATION REGARDING DEFENDANT'S MOTION TO TRANSFER OR DISMISS

---

Magistrate Judge Craig B. Shaffer

    This matter comes before the court on Defendant Colombia Sportswear Company's [hereinafter Columbia] motion to transfer or dismiss (doc. # 15) filed on June 8, 2017. District Judge Christine M. Arguello referred the motion to this court. Doc. 18. Plaintiff Cocona, Inc's response (doc. # 23) was submitted on June 29, 2017, and Columbia tendered its reply (doc. # 27) on July 12, 2017. On July 24, 2017 the court ordered (doc. # 28) both parties to submit simultaneous briefing on the issue of Cocona's patent as public information. Parties submitted their briefs (docs. # 31, 32) on July 31, 2017. The court has reviewed the motions and all related briefing and exhibits, the entire case file, and the applicable law, and is sufficiently advised in the premises.

**<u>Procedural Background</u>**

    Cocona, Inc. is a Delaware corporation located in Boulder, Colorado that develops technology for use in outdoor apparel. Columbia Sportswear Company is an Oregon based

1

manufacturer of clothing for outdoor recreation. As early as 2009, Cocona and Columbia explored a possible business relationship that never consummated. In contemplating this relationship, both parties signed the "Reciprocal Non-Disclosure Agreement" [hereinafter Agreement], referenced in the motion to transfer.

Plaintiff Cocona commenced this action by filing its Complaint (doc. # 1) on May 15, 2017. Plaintiff's Amended Complaint (doc. # 11) was filed on May 25, 2017 and remains the operative pleading in this case. Plaintiff alleges that Columbia infringed upon Cocona's United States Patent Number 8,945,287 B2, titled "Active Particle-Enhanced Membrane and Methods for Making and Using the Same," [hereinafter '287 Patent] and issued on February 3, 2015. Specifically, Cocona asserts that Columbia has been offering for sale garments containing a laminate layer which infringe the '287 Patent.

Columbia argues in its motion to transfer that the forum-selection clause in the Agreement, signed on December 3, 2009, requires Cocona to bring the case in Oregon. Columbia contends that the forum-selection clause is enforceable, and that the phrase "regarding this agreement" should be broadly construed to include the current action. Columbia maintains that it will rely on "facts regarding the agreement to support defenses to Cocona's claims," and thus "the present case is a proceeding regarding the agreement." In response, Cocona argues that courts only enforce a forum-selection clause when the claims fall within its scope, and that the current patent infringement claims do not "regard" the Agreement.

Defendant Columbia also moves to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. According to Columbia, dismissal is appropriate because Cocona's use of the term "product" in place of "composition," means that essential allegations are missing. Columbia further argues that because Cocona has failed to expressly state that the

infringing products are within the maximum moisture vapor transmission rate enumerated in claim 27 of the '287 Patent, Cocona has not sufficiently alleged a violation of every element of the claim. Cocona contends that its use of the term "product" rather than "composition" does not require dismissal at the pleading stage, and that its allegations of the infringing products' moisture vapor transmission rate is sufficient for the court to infer that the accused products plausibly infringe each element of the asserted claim.

## Analysis

**A. Motion to Transfer**

Defendant moves to transfer based on the Agreement's forum-selection clause. A valid forum-selection clause is enforceable through a motion pursuant to 28 U.S.C. § 1404(a). *See Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, 134 S. Ct. 568, 575 (2013). The forum-selection clause that Columbia seeks to enforce states, "The venue of any proceedings regarding this Agreement shall be in the state and federal courts in Oregon." *See* Agreement attached as Exhibit 1 to Declaration of Adam Kelly (doc. # 16–1 at ¶ 17). The parties disagree over how broadly or narrowly to construe the phrase "regarding this Agreement."[1]

The interpretation of a contract is a question for the court and is treated as a matter of law. *May v. Chicago Ins.*, 260 Or. 285, 292, 490 P.2d 150, 153 (Or. 1971).[2] The court applies a three-step methodology for contract interpretation. *Nixon v. Cascade Health Services*, 205 Or. App. 232, 238, 134 P.3d 1027, 1030–31 (Or. Ct. App. 2006). First, the court should determine

---

[1] As a threshold matter, the court has jurisdiction to interpret the Agreement regardless of the forum-selection clause. *Atlantic Marine,* 134 S. Ct. at 578 (holding that a forum-selection clause does not render venue in a court "wrong" or "improper").

[2] Both parties agree that the interpretation of this phrase is governed by Oregon law based on the Agreement's choice of law clause. *See generally Digital Ally, Inc. v. Z3 Technology, LLC*, 754 F.3d 802, 810 (10th Cir. 2014). However, neither the court nor the parties have found any examples of the Oregon courts interpreting this phrase.

whether a contractual provision is ambiguous. *Id.* Part of a contract is ambiguous when it can, in context, be reasonably given more than one meaning. *Pacific First Bank v. New Morgan Park Corp.*, 319 Or. 342, 348, 876 P.2d 761, 764 (Or. 1994). In making that determination the court is to consider the provision "in the context of the agreement as a whole and in light of the circumstances underlying the formation of the contract." *Batzer Const., Inc v. Boyer*, 204 Or. App. 309, 317, 129 P.3d 773, 778 (Or. Ct. App. 2006). Next, the court may rely on the extrinsic evidence of the contracting parties' intent. *Nixon*, 205 Or. App. at 238–39, 134 P.3d at 1031. Finally, if a provision is still ambiguous, the court relies on the appropriate maxims of construction. *Id.*[3]

The parties signed the Agreement when they were engaged in preliminary negotiations over a potential business relationship. *See* Defendant's Motion (doc. # 15 at pp. 2, 6). The first section of the Agreement states the intent to "protect the confidential and proprietary nature of the information disclosed by either party." *See* Agreement, doc. # 16–1. The Agreement contemplates confidential information that could be written, oral, or intangible. *Id.* at ¶ 2. The Agreement also excludes information made publicly known without wrongdoing, and stipulates that it expires after 3 years with certain provisions surviving. *Id.* at ¶¶ 3, 17. Columbia maintains that some of the information discussed under the Agreement involved manufacturing techniques of products now covered by the '287 Patent. *See* Defendant's Reply (doc. # 27 at p. 4, referencing Amended Complaint ¶¶ 16-18, 27). Ultimately, the parties never made any arrangement following the negotiations under the Agreement. *Id.*

---

[3] One maxim that applies here is to construe ambiguous language against the drafter of the contract. *See Berry v. Lucas*, 210 Or. App. 334, 340, 150 P.3d 424, 427 (Or. Ct. App. 2006). Although which party drafted the Agreement has not been established, the court notes that it appears on Columbia's letterhead.

To support its contention that this action does not regard the Agreement, Cocona points to language that states the Agreement was "for the sole purpose of evaluating a potential business relationship," and "[a]ny future business relationship between the parties regarding the subject matter hereof shall be the subject of a separate agreement to be negotiated and executed by the parties."[4] *See* Plaintiff's Response (doc. # 21 at p. 10) (citing Agreement, doc. # 16–1 at 1, ¶¶ 4, 9). Cocona argues that because the Agreement did not grant any license or patent rights, it has no bearing on the infringement of a public patent. Cocona contends that the parties could have written a broader forum-selection clause had they intended the Agreement to govern all future actions concerning the parties. *See Kwiecinski v. Medi-Tech Int'l Corp.*, No. 3:14-CV-01512-BR, 2015 WL 3905224, at *5 (D. Or. June 25, 2015).

Columbia argues in its brief (doc. # 32) that it will rely on equitable defenses relating to the course of dealing under the Agreement, and alleges that Cocona amended its pending patent application, prior to issuance, in an effort to include Columbia's products. Columbia cites a series of cases for the proposition that "regarding this agreement" should be interpreted broadly to include the current action. However, none of the cases Defendant identifies, even those construing the forum-selection clause broadly, support reading the language "regarding" so expansively as to include the current action. *See Teran v. GB Intern., S.P.A.*, 920 F. Supp. 2d 1176, 1184 (D. Kan. 2013), *see also Billing v. CSA-Credit Solutions of Am., Inc.*, No. 10-cv-0108 BEN (NLS), 2010 WL 2542275, at *3 (S.D. Cal. June 22, 2010).

Considering the Agreement in the context of its formation, the term "regarding" is unlikely to be so broad as to include Cocona's Amended Complaint. There is no confidential

---

[4] The Agreement's use of "regarding" in this paragraph appears to further limit its application, and draws a distinction between the subject matter of the Agreement, and the Agreement itself. *See* Agreement, doc. # 16–1 at ¶ 9.

information alleged in the Complaint or Amended Complaint, and the business negotiations under the Agreement ended several years ago. The harm that the "Reciprocal Non-Disclosure Agreement" was intended to prevent, the unlawful disclosure of confidential information, is no longer possible in this context because Cocona's allegations concern only public information. To consider this action as "regarding" the Agreement would be to construe the Agreement so expansively as to include almost any future activity that has any factual link with the parties' initial business discussions. *See generally Cook v. S. Pac. Transp. Co.,* 50 Or. App. 547, 552, 623 P.2d 1125, 1129 (Or. Ct. App. 1981) (holding that defendant's overly broad construction of "arising out of or in connection with" in an indemnity clause would extend the provision to almost any injury). The Agreement was not written with that intention; instead it governs a specific set of activities over a limited duration.

Other courts have interpreted the phrase "regarding this agreement" to include any cause of action arising under the agreement, or that requires the interpretation of the agreement. *Billing*, 2010 WL 2542275, at *3. In *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988), the court enforced a forum selection clause that provided "Florence shall be the forum for resolving disputes regarding 'interpretation' or 'fulfillment' of the contract," because the plaintiff's claims could not "be adjudicated without analyzing whether the parties were in compliance with the contract." *Id.* at 514.

In another case, the forum-selection clause in a software purchase contract stated, "Any litigation between the parties regarding the terms of performance of this contract shall take place in Miami Dade County, Florida." *Attachmate Corp. v. Public Health Trust of Miami-Dade County Fla.*, 686 F. Supp. 2d 1140, 1150 (W.D. Wash. 2010). The plaintiff alleged a claim for copyright violation and breach of contract for the over-installation of software in violation of an

End User License Agreement. *Id.* at 1145, 1150. The court in *Attachmate* declined to enforce the purchase order's forum-selection clause, holding that because the purchase contract concerned different subject matter than the complaint, the action was not "regarding" the contract. *Id.* at 1150.

Applying those courts' analysis would still exclude the current action. Cocona is not seeking to avoid its contractual obligation through creative pleading, but rather asserts a cause of action authorized by statute, independent of the Agreement. A defendant's interposition of a contract as a defense to infringement claims does not transform a suit into a breach of contract action. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 388 (2d Cir. 2007) (citing *Kamakazi Music Corp. v. Robbins Music Corp.*, 684 F.3d 228, 229 (2d Cir. 1982)); *see also generally Desktop Images, Inc. v. Ames*, 929 F. Supp. 1339, 1345 (D. Colo. 1996). Thus, because the Amended Complaint neither requires the Agreement for its cause of action, nor an interpretation of the terms or compliance with the Agreement to resolve the action, the operative pleading is not "regarding" the Agreement. *See Billing*, 2010 WL 2542275, at *3.

The Agreement also mentions that, "[i]f either party brings any action, suit…for any relief against the other in connection with the Agreement, the substantially prevailing party shall be entitled to recover all reasonable fees and costs incurred in connection therewith." *See* Agreement, doc. # 16–1 at ¶ 16. The Supreme Court of Oregon held that an action was not "in connection with this Agreement" because of the "noncontractual nature of the allegedly improper acts that are the sources of the rights and duties that plaintiffs' action sought to enforce." *Black v. Arizala,* 337 Or. 250, 270, 795 P.3d 1109, 1119 (Or. 2004).[5] The Supreme Court of Oregon's

---

[5] As Defendant notes, the Supreme Court of Oregon applied Delaware law in *Black. See* 337 Or. at 266, 95 P.3d at 1117. However, no Delaware court had addressed this precise issue, and the

narrower interpretation of a phrase that precedes the forum-selection clause further reinforces that "regarding this Agreement" cannot reasonably be construed so broadly as to include the current action.

The court separately questions whether the current action is not subject to the Agreement's forum-selection clause by the document's own terms. Paragraph 3 states, "[t]his Agreement shall not apply to any information that (a) has been or becomes publicly known, through no wrongful act of the Receiving Party." *See* Agreement, doc. # 16–1 at ¶ 3. The court directed (doc. # 28) the parties to address "to what extent, if at all, the exclusionary provision in Paragraph 3 of the Agreement applies to Plaintiff's Patent." Cocona argues that even if techniques involving the '287 Patent were discussed under the Agreement, the minute the '287 Patent became public the Agreement ceased to apply.[6] Columbia suggests that because the provision excluding public information expired prior to the issuance of the '287 Patent, it does not apply.

Accepting Columbia's contentions would result in an interpretation that renders the surviving portions of the Agreement unintelligible. The expiration clause in paragraph 14 states:

> The term of this Agreement shall begin on the Effective Date and shall continue for three (3) years, unless terminated sooner on thirty (30) days written notice by either party. Paragraphs 4-8, 12, 13, 17 and 18 shall survive the termination of this Agreement.

*See* Agreement, doc. # 16–1 at ¶ 14.

By its own terms, nearly half of the Agreement never expires. However, it is seemingly impossible to enforce the contract's surviving terms without interpreting and applying many of

---

Supreme Court of Oregon independently concluded that a Delaware case interpreting the phrase for an arbitration clause was analogous for a forum-selection clause.

[6] Cocona also contends that Columbia has not demonstrated that techniques covered by the '287 Patent were discussed as "Confidential Information" under the Agreement. However, this seems to contradict Cocona's own allegations for knowing infringement in the Amended Complaint.

the expired portions of the contract. Though Paragraph 3 does expire, so do the definitions of the information the Agreement was intended to cover.[7] Without knowing what the Agreement defines as "Confidential Information," a party cannot assert or defend as to its disclosure. To that end, the exclusionary clause in Paragraph 3 is an essential part of the Agreement's definition of "Confidential Information." It is apparent from reading the plain language of the Agreement that it was never intended to cover information like patents, which are public by their very nature. *See generally Owens-Corning Fiberglass Corp. v. Knauf Fiber Glass GmbH*, No 89-3280, 1990 WL 124208, at *2 (6th Cir. Aug. 27, 1990); *see also Ultimax Cement Mfg. v. CTS Cement Mfg.*, 587 F.3d 1339, 1355–56 (Fed. Cir. 2009). Finally, the exclusionary provision not only contemplates information that was public at the time, but also information that "becomes public."

### B. Motion to Dismiss

Having determined that this district is the appropriate forum to bring this case, the court now turns to the pending motion to dismiss. Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Under Rule 12(b)(6), the factual allegations of the complaint are taken as true and all reasonable inferences drawn in favor of the plaintiff. *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th. Cir. 2006).

A party asserting a patent claim must only plead facts sufficient to place the alleged infringer on notice of what they must defend. *FootBalance System Inc. v. Zero Gravity Inside, Inc.*, 15-CV-1058 JLS (DHB), 2016 WL 903681, at *4 (S.D. Cal. Feb. 8, 2016) (citing *K-Tech

---

[7] Paragraph 1 is titled "Confidential Information" and gives an initial definition, Paragraph 2 enumerates as to the various formats "Confidential Information" may take, and Paragraph 3 further elaborates on what is not "Confidential Information." *See* Agreement, doc. # 16–1.

*Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013)). Thus, a plaintiff must make allegations "sufficient to permit the court to infer that the accused product infringes each element of at least one claim." *Telesign Corp. v. Twilio, Inc.*, cv 16-2106 PSG (SSx), 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016). However, a plaintiff "is not required to specifically recite each element of the claims of the asserted patent." *See L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1080 (D. Colo. 2012).

Here Defendant argues that use of the term "product" instead of the term "composition," as well as the omission of the maximum transfer rate, makes Cocona's allegations insufficient. Cocona contends that the Amended Complaint adequately identifies the infringing products, and that its allegations of the transfer rate are sufficient for the court to infer infringement of each element of the claim. Plaintiff's Amended Complaint states "…all products that contain the Columbia Omni-Wick EVAP laminate have a moisture vapor transmission rate greater than 600 g/sq. m/24 hour period." (doc. # 11 at ¶ 26). The patent claim element at issue reads "a moisture vapor transmission rate of the water-proof composition comprises from about 600 g/m^2/day to about 11000 g/m^2/day." Claim 27 of the '287 Patent, doc. # 11–1, Exhibit 1 to Amended Complaint.

Substituting the term "product" for the term "composition" does not make the statement any less clear, nor does it hinder notice of what products are alleged to infringe and in what way.[8] Further, the omission of the maximum transmission rate does not introduce any doubt or confusion as to the elements referenced. Columbia points specifically to the element at issue in the motion to dismiss, demonstrating that Columbia has received adequate notice and is aware of

---

[8] The Merriam-Webster entry for "composition" includes: "a product of mixing or combining various elements or ingredients." *See composition*, Merriam-Webster, https://www.merriam-webster.com/dictionary/composition (last visited September 12, 2017).

precisely which products it must defend. Drawing all reasonable inferences for Plaintiff, the Amended Complaint alleges sufficient facts about the infringement to survive the motion to dismiss. *See L-3 Communications*, 863 F. Supp. 2d at 1080, *see also InsideSales.com, Inc. v. SalesLoft, Inc.*, No. 2:16CV859DAK, 2017 WL 2559932, at *4 (D. Utah June 13, 2017); *Sunrise Technologies, Inc. v. Cimcon Lighting, Inc.*, 219 F. Supp. 3d 260, 263 (D. Mass. 2016).

## **Conclusion**

For the foregoing reasons, the court recommends that Defendant Columbia's motion to transfer under 28 U.S.C. § 1404(a) be denied. It is also recommended that Columbia's motion to dismiss under Fed. R. Civ. P. 12(b)(6) be denied as well.

DATED this 12th day of September 2017.

BY THE COURT:

*s/Craig B. Shaffer*
United States Magistrate Judge